FIBER INDUSTRIES, INC. v. SALEM CARPET MILLS, INC.

No. 8321SC608

(Filed 5 June 1984)

**Customs and Usages § 1; Uniform Commercial Code § 7— evidence of usage of trade inadmissible—failure to prove usage of trade**

> In plaintiff fiber manufacturer's action to recover the purchase price of fiber sold to defendant carpet manufacturer in which defendant claimed it was entitled to an offset for losses suffered as a result of plaintiff's cessation of production of carpet fiber, evidence was not admissible under G.S. 25-2-202(a) to show a "usage of trade" obligating plaintiff to fill all orders by defendant during the projected market life of any carpet style which utilized fiber manufactured by plaintiff where it is clear that both parties intended that their purchase order and purchase acknowledgment forms should comprise all obligations between them. Furthermore, defendant's evidence was insufficient to show that the customary practice of the carpet industry placed on a manufacturer of carpet fiber a continuing obligation to fill all orders of a maker of a carpet utilizing that fiber. G.S. 25-1-205(2).

APPEAL by defendant from *Mills, Judge.* Judgment entered 21 February 1983 in Superior Court, FORSYTH County. Heard in the Court of Appeals 5 April 1984.

Prior to 1980, Fiber Industries (Celanese) sold fiber to carpet manufacturers for their use in the making of carpets. Beginning in 1975, Salem Carpet bought trademarked "Fortrel" and "For-

tron" fiber from Celanese on an order-by-order basis. Celanese and Salem Carpet had no written agreement other than the individual purchase orders.

On 14 August 1980, Celanese announced that it was withdrawing from the carpet industry and would cease production of nylon and polyester staple by 31 December 1980. In its announcement, Celanese stated that "all carpet fiber customers will be supplied fiber in an orderly fashion until phase-outs are complete."

Salem Carpet continued to purchase the nylon fiber from Celanese after the decision to withdraw was announced and placed one final order in December of 1980, which was delivered and accepted. Salem Carpet refused to pay the purchase price of $407,128.40 and claimed an offset and counterclaim for approximately $400,000 for losses allegedly suffered as a result of Celanese's withdrawal from the carpet industry.

On 25 March 1981, Celanese filed suit against Salem Carpet for the purchase price plus interest. In its answer and counterclaim, Salem Carpet denied liability and asserted breach of contract on the part of Celanese. On 21 February 1983, the trial court granted Celanese's motion for summary judgment on all claims. From that order Salem Carpet appeals.

*Petree, Stockton, Robinson, Vaughn, Glaze and Maready, by Jackson N. Steele and Daniel R. Taylor, Jr., for defendant appellant.*

*Brooks, Pierce, McLendon, Humphrey and Leonard, by James T. Williams, Jr. and Katherine A. McLendon, for plaintiff appellee.*

ARNOLD, Judge.

Salem Carpet contends that the trial court erred in granting Celanese's motion for summary judgment in that Celanese breached an implied warranty established by "usage of trade" within the carpet industry. It is claimed that, in accordance with customary practice, Celanese was obligated to fill all orders made by Salem Carpet during the projected market life of any carpet style which utilized fiber manufactured by Celanese. We do not agree with this contention and affirm the order of the trial court.

The Uniform Commercial Code, as embodied in Chapter 25 of the North Carolina General Statutes, defines "usage of trade" as:

> any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question . . . G.S. 25-1-205(2).

In short, Salem Carpet claims that it was justified in expecting that all orders made on Celanese would be filled because, as was stated in the affidavit of J. Terris Hagan, vice president of marketing for Salem Carpet:

> in the carpet industry where a manufacturer of fiber makes available a branded fiber for use by a carpet manufacturer in the introduction of a new line or style, it is the standard practice, custom, and usage of trade in the carpet industry that the fiber manufacturer will fill all orders submitted by the carpet manufacturer for use in producing that style carpet and further that the fiber manufacturer will continue to make its branded fiber available for the useful life of the carpet style or for sufficient time to allow the carpet manufacturer to produce and sell sufficient carpet to recoup the large start-up expenses incurred in introducing and marketing a new line of branded carpet.

Before considering what constituted the standard practice in the carpet industry during the time Salem Carpet and Celanese contracted to buy and sell carpet fiber, it is necessary to examine the actual agreement which existed between them. Throughout the course of their relationship, the two parties transacted business on an order-by-order basis. Salem Carpet periodically placed orders for a stated amount of fiber and Celanese filled these orders as they were received. The standard Celanese order acknowledgment form provided:

> These terms and conditions [set out in the acknowledgment form] constitute the entire contract. No modification, limitation, waiver or discharge of this contract or of any of its terms shall bind Seller unless in writing and signed by Seller's authorized employee at its headquarters.

Salem Carpet's purchase order form contained similar language:

This purchase order contains all the terms and conditions of the purchase agreement and shall constitute the complete and exclusive agreement between Seller and Purchaser. No modification, rescission or waiver of this purchase order or of any of its terms shall be effective unless in writing signed by the parties.

Since it is clear that both Salem Carpet and Celanese intended their respective purchase order forms to comprise any and all obligations they might have owed the other party, the question arises as to whether Salem Carpet can now introduce evidence to show that the usage of trade inherent in the carpet industry required Celanese to continue to fill its orders. The Uniform Commercial Code provides:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing or usage of trade . . . G.S. 25-2-202(a).

The Code, therefore, allows Salem Carpet only to supplement or explain the terms of the written purchase orders. Since neither the forms of Salem Carpet nor those of Celanese contain any mention of a continuing obligation to sell carpet fiber or, in any way, to compensate Salem for its loss, it would appear that evidence as to usage of trade in the carpet industry is irrelevant as a matter of law. G.S. 25-2-202(a) clearly limits the use of trade usage evidence to that which *explains* or *supplements* the terms of the written agreement. We find the usage of trade evidence urged by Salem Carpet goes beyond merely explaining or supplementing existing terms, but, in fact, imposes additional obligations on Celanese. As this Court stated in *Recreatives, Inc. v. Travel-On Motorcycles Co.*, 29 N.C. App. 727, 225 S.E. 2d 637 (1976), "explanatory or supplemental information is not to be admitted when the '. . . court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.'" *Id.* at 730, 225 S.E. 2d at 639. *See* G.S. 25-2-202(b).

It is important to note that even if trade usage evidence were admissible in this case, Salem Carpet failed to establish a question of fact sufficient to survive Celanese's motion for summary judgment. The evidence proposed to show a "regularity of observance" in the carpet industry actually amounted to no more than self-serving affidavits of Salem Carpet employees. There was no independent evidence that the customary practice of the carpet industry places on a manufacturer of carpet fiber a continuing obligation to fill all orders of the maker of a carpet which utilizes that fiber. We find that Salem Carpet failed to meet its burden of showing a genuine issue of material fact as to the existence of such a trade usage in the carpet industry as is required by Rule 56 of the North Carolina Rules of Civil Procedure. The granting of the motion for summary judgment is, therefore,

Affirmed.

Judges WELLS and BRASWELL concur.